United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARACELI MAGANA SANCHEZ, Plaintiff, v. HARMONY FOODS, LLC, et al., Defendants. | Case No. 26-cv-05312-VKD<br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING PROCEEDINGS**<br>Re: Dkt. No. 8 |

In this employment action, plaintiff Araceli Magana Sanchez sues Harmony Foods, LLC ("Harmony Foods") and Carlyn Solomon (collectively "defendants") for disability discrimination, wage and hour violations, and wrongful termination. Defendants move to compel arbitration. Dkt. Nos. 8, 19. Ms. Magana opposes the motion. Dkt. No. 16. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants defendants' motion to compel arbitration and stays the present action.[1]

## I. BACKGROUND

Harmony Foods says that it manufactures "innovative dosage forms," including gummies, lozenges, and soft chews, for over-the-counter drugs, vitamins, and supplements. Dkt. No. 8-3 ¶ 2. Ms. Solomon was Harmony Foods's Chief Executive Officer from May 2017 to January 2026. *Id.* ¶ 4. Ms. Magana states that she began her employment with Harmony Foods in July 2021, working as a Production Utility employee at Harmony Foods's facility in Santa Cruz,

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 10.

United States District Court
Northern District of California

California. Dkt. No. 16-1 ¶ 3; *see also* Dkt. No. 1 at 19 (Complaint ¶ 20).[2] Ms. Magana was later promoted to a Return to Stock position, and then to a Pre Weigh Coordinator position, in which she oversaw production processes. *See* Dkt. No. 8-3 ¶ 5; Dkt. No. 1 at 19 (Complaint ¶ 20). Harmony Foods terminated Ms. Magana's employment in February 2025. Dkt. No. 1 at 20 (Complaint ¶ 27); Dkt. No. 8-3 ¶ 5. Ms. Magana alleges that Harmony Foods fired her because she was on medical leave from work due to diagnosed mental health disabilities. *See* Dkt. No. 1 at 20 (Complaint ¶ 22). She asserts that defendants "falsely characterized the termination as a 'voluntary quit' or 'job abandonment,' despite knowing that [she] remained on protected medical leave and had been communicating with [d]efendants regarding her condition." *Id.* ¶¶ 26, 27.

On March 30, 2026, Ms. Magana filed the present action in the Santa Cruz County Superior Court, asserting fifteen claims for relief[3] under California and/or common law, including claims for disability discrimination, failure to provide reasonable accommodation, retaliation, wrongful termination, and wage and hour violations. *See* Dkt. No. 1 at 13-44. On June 3, 2026, Ms. Solomon removed the action to this Court, asserting federal diversity jurisdiction, 28 U.S.C. § 1332. Dkt. No. 1.[4]

Defendants now move for an order compelling arbitration and dismissing or staying the present litigation. They contend that pursuant to a Mutual Arbitration Agreement ("MAA") signed by Ms. Magana in January 2023, all of her claims are subject to arbitration with JAMS. The MAA provides, in relevant part, that the "Parties agree to arbitrate all claims that may legally

---

[2] With respect to filed documents, all pin citations refer to the page number appearing on the ECF document header.

[3] The asserted claims are: disability discrimination (claim 1); failure to provide reasonable accommodation (claim 2); failure to engage in a good faith interactive process (claim 3); failure to prevent discrimination (claim 4); retaliation (claim 5); wrongful termination (claim 6); wrongful termination in violation of public policy (claim 7); intentional infliction of emotional distress (claim 8); failure to pay overtime wages (claim 9); failure to pay minimum wages (claim 10); failure to provide meal periods (claim 11); failure to provide rest periods (claim 12); waiting time penalties (claim 13); failure to indemnify (claim 14); and unfair competition (claim 15).

[4] Upon removal, defense counsel entered an appearance for both defendants. Dkt. No. 2. While the removal notice states that Ms. Solomon removed this action, Harmony Foods apparently joined in the removal.

be submitted to arbitration, including those set forth in Section 3, that may arise between the Parties."[5] Dkt. No. 8-2, Ex. A (sec. 1). Section 3 of the MAA provides, in relevant part, that the covered claims include:

> all past, present, and future disputes and claims relating to, arising out of, or connected with Your relationship and/or employment with, application for employment with, and/or termination of employment with the Company and/or a Beneficiary Party, except as set forth in Section 4 below ("Claims"). Claims include, but are not limited to: wrongful termination; discrimination; harassment; retaliation or whistleblower claims; breach of contract/agreement (including confidentiality agreements); violation of public policy or unfair competition; violation of non-compete provisions; violation of non-solicitation agreements; breach of fiduciary duty; theft, conversion, or misappropriation; violation of intellectual property rights, including trade secrets; emotional distress; fraud, misrepresentation, concealment, defamation, or any other tort or common law claim; confidentiality claims; all wage and hour claims, including but not limited to minimum wage, off-the-clock work, overtime, bonuses, commissions, meal/rest periods, sick leave, vacation, wage statements, reimbursements, penalties, and benefits; violations of any federal, state, local, or other governmental constitution, statute, ordinance, or regulation arising out of, relating to, or governing your employment relationship with the Company and/or a Beneficiary Party, such as (as amended) Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Rehabilitation Act, the Fair Labor Standards Act, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, the Equal Credit Opportunity Act, the California Fair Employment and Housing Act, the California Family Rights Act, the California Government Code, the California Labor Code, the California Civil Code, the California Wage Orders, and/or the California Private Attorneys General Act ("PAGA") to the fullest extent permitted by applicable law. These are examples of Claims. The list is not exhaustive, and all Claims are subject to this Agreement. If a specific law or cause of action is not specifically listed above, that does not exclude such Claim from coverage under the Agreement.

*Id.* (sec. 3).

---

[5] Under the MAA, the term "Parties" refers to Harmony Foods "and its parent companies, subsidiaries, affiliates, officers, directors, employees, agents, representatives, shareholders, successors, and assigns" and "the Employee whose name and signature appear [on the MAA] below[.]" Dkt. No. 8-2, Ex. A (preamble).

The MAA also contains a delegation clause. The relevant portion of the MAA's Section 3 provides that, with exceptions for the MAA's provisions concerning waivers of "Class and/or Collective Actions" and "Representative Actions," any questions of arbitrability must be determined by an arbitrator, and not by a court:

> In addition, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of this Agreement. However, the preceding sentence shall not apply to the waivers of "Class and/or Collective Actions" (Section 9) and "Representative Actions" (Section 10) described below. Notwithstanding any other provision of this Agreement and/or the JAMS Rules or Procedures, any dispute regarding the interpretation, applicability or enforceability of the Class, Collective and/or Group Action waivers (Section 9) and Representative Action waivers (Section 10) in this Agreement may be resolved only by a court and not by an arbitrator.

Dkt. No. 8-2, Ex. A (sec. 3).

Ms. Magana does not challenge the existence of the MAA. Nor does she dispute defendants' arguments that the Federal Arbitration Act ("FAA") applies, or that the MAA contains a delegation clause and encompasses all of her claims asserted in this litigation. Rather, she contends that the delegation clause and the MAA as a whole are invalid and should not be enforced because they are procedurally and substantively unconscionable. Defendants maintain that the MAA is valid and enforceable and requires arbitration of Ms. Magana's claims. Even if any provisions Ms. Magana complains of are found unconscionable, defendants argue that the appropriate remedy is to sever any such provisions and enforce the remainder of the MAA.

## II. LEGAL STANDARD

The FAA governs written arbitration agreements "evidencing a transaction involving commerce," *see* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001), and requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement, *see* 9 U.S.C. § 3; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Under the FAA, a district court must compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of the agreement. *See Geier v. M-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (citing *Chiron Corp.*, 207 F.3d at 1130); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no

place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4). As noted above, Ms. Magana does not dispute that the MAA encompasses her claims. Thus, the only issue is whether the MAA is a valid and enforceable agreement to arbitrate.

Arbitration agreements are "a matter of contract" and "may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (citation omitted). Parties may "agree to limit the issues subject to arbitration" and "to arbitrate according to specific rules." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). In determining the validity or enforceability of an arbitration agreement, courts generally apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). On this point, the parties appear to agree that California law applies. *See generally* Dkt. Nos. 16, 19.

## III. DISCUSSION

### A. Ms. Magana's Evidentiary Objections

Ms. Magana objects to paragraph 6 of the declaration submitted by Julie Bartell, who has since February 27, 2023 held the position of Harmony Foods's Vice President of Human Resources Operations. *See* Dkt. No. 8-3 ¶ 2. In paragraph 6 of her declaration, Ms. Bartell offers testimony regarding Ms. Magana's signing of the MAA. Ms. Magana objects that Ms. Bartell's testimony lacks foundation and is inadmissible hearsay. Fed. R. Evid. 602, 802, 803(6).

The record indicates that there is a factual dispute about how much time Ms. Magana had to review the MAA before she signed it, and the circumstances surrounding her supervisor's requests or alleged coercion to sign the MAA. However, for present purposes, the salient (and undisputed) point is that Ms. Magana signed the MAA on or around January 31, 2023. *See* Dkt. No. 8-3 ¶ 6; Dkt. No. 16 at 25. Ms. Magana's evidentiary objections are overruled.

**B. Delegation Clause**

Delegation clauses "are essentially severable mini-agreements within agreements to arbitrate." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001 (9th Cir. 2023) (citing *Rent-A-Center*, 561 U.S. at 70-73). Such clauses "delegate[] to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chicksaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center*, 561 U.S. at 68-69). Thus, the presence of a delegation clause further limits the issues that a court may decide in reviewing an arbitration agreement. *Id.*; *see also Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) ("Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator."). If the parties formed an agreement to arbitrate containing an enforceable delegation clause, "all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Caremark*, 43 F.4th at 1030.

As discussed above, the MAA contains a delegation clause that provides, with certain exceptions not relevant here, that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of this Agreement." Dkt. No. 8-2, Ex. A (sec. 3). At the outset, the parties dispute whether Ms. Magana has sufficiently challenged the enforceability of the MAA's delegation clause, such that the Court, rather than an arbitrator, should review that challenge.

In the Ninth Circuit, "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it[.]" *Bielski*, 87 F.4th at 1011. A party resisting arbitration "may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." *Id.* The Ninth Circuit has noted that this framework is consistent with "a relatively low barrier to entry: if a party's challenge mentions and specifically relates to the validity of the delegation provision in its opposition to the motion to compel arbitration or other pleading, the federal court has a green light to consider those arguments." *Id.* at 1010. Additionally, a party is permitted to "challenge the enforceability of a

delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Holley-Gallegly*, 74 F.4th at 1002. In doing so, the party resisting arbitration "must explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *Id.* (citing *Rent-A-Center*, 561 U.S. at 74).; *see also Rent-A-Center*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court."); *Bielski*, 87 F.4th at 1012 ("In evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret that provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well."). Such a challenge may present "a much more difficult argument to sustain" than an argument that the same limitation renders the arbitration agreement, as a whole, unconscionable. *See Rent-A-Center*, 561 U.S. at 74.

While defendants argue that Ms. Magana did not specifically challenge the MAA's delegation provision in the parties' pre-litigation negotiations, she expressly does so in her opposition papers. She presents arguments, spanning several pages, challenging the enforceability of that clause. *See* Dkt. No. 16 at 11-14. Accordingly, the Court considers her arguments here. *See Bielski*, 87 F.4th at 1010.

Ms. Magana contends that the delegation clause is procedurally and substantively unconscionable. She argues that the delegation clause is procedurally unconscionable because the MAA is a contract of adhesion that Ms. Magana says she was forced to sign as a condition of her continuing employment with Harmony Foods, without any meaningful opportunity to negotiate. She argues that the delegation clause is substantively unconscionable when examined together with the MAA's Section 12, which concerns "Mass Arbitrations."[6]

---

[6] Ms. Magana's arguments regarding the substantive unconscionability of the delegation clause focus on the MAA's Section 12. Accordingly, the Court's evaluation of those arguments also focus on the MAA's Section 12. While Ms. Magana challenges other MAA provisions in her arguments pertaining to the MAA as a whole, she states that those other provisions are "independently unconscionable," separate and apart from her challenge to the MAA's delegation clause. *See* Dkt. No. 16 at 18.

**1. Unconscionability**

Under California law, a court may refuse to enforce a provision of a contract if the court determines that the contract was "unconscionable" at the time it was made. Cal. Civ. Code § 1670.5(a). Unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation modified; citation omitted). To demonstrate that the MAA's delegation clause is unconscionable under California law, Ms. Magana "must show that the clause is both procedurally and substantively unconscionable." *Heckman v. Live Nation Entm't, Inc.*, 120 F.4th 670, 681 (9th Cir. 2024). However, procedural and substantive unconscionability "need not be present in the same degree." *Armendariz*, 24 Cal. 4th at 114 (citation modified; citation omitted). Unconscionability is evaluated along a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* The "central idea" of the "unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) (citation modified; citations omitted).

**a. Procedural Unconscionability**

Procedural unconscionability focuses on "'oppression or surprise due to unequal bargaining power.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum*, 55 Cal. 4th at 247 (citation modified; citation omitted). There are degrees of procedural unconscionability. "At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (citation modified; citation omitted). "Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Id.* (citation

modified; citation omitted). "A finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.* (citation modified; citation omitted); *see also Poublon*, 846 F.3d at 1261 ("In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high.") (citation modified).

**i. Contract of adhesion**

Ms. Magana's principal contention is that the MAA is procedurally unconscionable because it is a contract of adhesion, i.e., she was presented with the MAA and made to sign it on the same day, with no opportunity to negotiate, and was told by her supervisor that she had to sign the MAA or her employment would be terminated. *See* Dkt. No. 16-1; *see also Armendariz*, 24 Cal. 4th at 113 ("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."). She also points out that Section 7 of the MAA provides that an employee need not even sign the MAA; rather, "[b]y accepting or continuing employment with the Company after receiving this document, [an employee] agree[s] to the terms of this Agreement even if [the employee] do[es] not sign it." Dkt. No. 8-2 (sec. 7). In their reply, defendants counter that the MAA's delegation clause could not be adhesive, in view of the MAA's provision giving employees 14 days from their receipt of the MAA to opt out of it. *See* Dkt. No. 19 at 10; *see also* Dkt. No. 8-2 (sec. 8).

The Ninth Circuit has held that "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 12011, 1211 (9th Cir. 2016) (finding delegation clause is not unconscionable where arbitration agreement provided non-illusory opportunity to opt out); *see also Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (same); *Puntillo v. Int'l Travel Network, LLC*, No. 24-cv-08931-HSG, 2026 WL 1257755, at *4 (N.D. Cal. May 7, 2026) (finding "a minimal degree of procedural unconscionability, if any" where, among other things, contract included an opt-out provision); *Slaviero v. Baby List, Inc.*, No. 25-cv-09496-RS, 2026 WL 1097746, at *5 (N.D. Cal. Apr. 22,

2026) (finding contract non-adhesive where plaintiffs were given opportunity to opt out by letter).

It thus appears that the MAA's opt-out clause precludes a finding that the MAA is a contract of adhesion. At the motion hearing, Ms. Magana acknowledged that the MAA contains an opt-out clause that gave her the opportunity to opt-out of the MAA. Ms. Magana's counsel asserted that Ms. Magana only read the first page of the MAA, and did not review the remainder of the MAA after her supervisor reportedly coerced her to sign it. In any event, Ms. Magana maintains that the effect of the opt-out clause is outweighed by other indicia of procedural unconscionability. The Court now turns to the parties' arguments regarding those factors.

**ii. Oppression and Surprise**

"The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126-27 (2019). Surprise occurs "where the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* at 126; *Pinnacle Museum*, 55 Cal. 4th at 247.

Ms. Magana reiterates that she was given no choice but to sign the MAA on the same day she received it, and that her supervisor told her that her employment would be terminated if she did not sign. While she acknowledges that she was given a Spanish translation of the MAA, she also states that she is a high school graduate, with no legal training. Until her present attorneys explained it to her, Ms. Magana says that she did not understand what arbitration is or the legal significance of signing the MAA. She also contends that while the MAA stated where and how she could obtain a copy of the applicable JAMS rules, the MAA did not append a copy of the rules themselves. *See* Dkt. No. 16-1.

As noted above, the parties appear to dispute the circumstances under which Ms. Magana signed the MAA and how much time she had to review the agreement beforehand. Ms. Magana maintains that she signed the MAA the same day it was presented to her, under pressure from her

supervisor, who reportedly told her that refusing to sign the MAA would terminate her employment. *See* Dkt. No. 16-1 ¶ 9. Defendants argue that Ms. Magana's declaration is self-serving. They contend that her continued employment did not depend on signing the MAA, as evidenced by the opt-out clause. *See* Dkt. No. 19 at 9. On this record, defendants have provided no evidentiary basis for the Court to conclude that Ms. Magana had hours to review the MAA "at her leisure." *See id*. But even crediting Ms. Magana's assertions that she was pressured to sign the MAA, on a take-it-or-leave-it basis, the same day she received it, she has established at most low degree of procedural unconscionability.

Ms. Magana does not persuasively argue that the degree of procedural unconscionability is increased by her asserted lack of legal knowledge or training. *See* Dkt. No. 16-1 ¶¶ 11-12, 14. She raises no issues with respect to the Spanish translation of the MAA. The delegation clause is written in standard font, and it does not include confusing statutory references or unnecessarily long and complex sentences. *Cf. OTO*, 8 Cal. 5th at 128 (procedural unconscionability demonstrated, in part, by agreement that was "a paragon of prolixity," written in "extremely small font" with "sentences [that] are complex, filled with statutory references and legal jargon."). That defendants did not explain what an arbitration is, or suggest that Ms. Magana seek the advice of counsel, does not increase the degree of procedural unconscionability. *See, e.g., Rosales v. Vitas Healthcare Corp. of Cal.*, No. 25-cv-05417-JSC, 2025 WL 2954975, at *4 (N.D. Cal. Sept. 16, 2025) ("That Plaintiff did not understand, and Defendant did not explain, the consequences of agreeing to arbitration also does not increase the Agreement's procedural unconscionability."); *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (2016) ("failure to explain the meaning of arbitration" alone is insufficient to increase procedural unconscionability).

Nor does Ms. Magana persuade that procedural unconscionability is compounded by a failure to provide her with a copy of the JAMS rules. A failure to provide a copy of the rules governing the arbitration is not necessarily procedurally unconscionable, absent a showing that the employer "hid" rules that were unusual or that were otherwise unconscionable themselves. *See Baltazar*, 62 Cal. 4th at 1246. Ms. Magana makes no such showing that the JAMS rules themselves contribute to the unconscionability of the MAA's delegation clause. Accordingly, she

has not established that defendants' failure to provide a copy of the applicable JAMS rules renders the delegation clause procedurally unconscionable.

Although Ms. Magana has presented some evidence that she signed the MAA under pressure as a condition of her continuing employment, she has not established any other element of oppression or surprise with respect to the HAA. The degree of procedural unconscionability therefore is low. *See Poublon*, 846 F.3d at 1263.

**b. Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum*, 55 Cal. 4th at 246. Terms are unconscionable if they are "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Sanchez*, 61 Cal. 4th at 910-11 (citation modified). Thus, the court must look for terms that are "unreasonably favorable to the more powerful party." *Id.* at 911 (citation modified).

Ms. Magana argues that the MAA's delegation clause is substantively unconscionable when evaluated in conjunction with the MAA's Section 12, which concerns "Mass Arbitrations." In relevant part, Section 12 provides:

> If twenty-five (25) or more individuals initiate arbitration against the Company and/or a Beneficiary Party (whether jointly or individually) within a one-year period under circumstances in which the Company reasonably believes the arbitrations qualify as a Mass Arbitration, the Company shall have the right to stay all such arbitrations while it petitions a court of competent jurisdiction for a determination that the arbitrations qualify as a Mass Arbitration. If the Court determines that the arbitrations at issue meet the definition of a Mass Arbitration set forth above, the Company and/or a Beneficiary Party shall be entitled to have all such arbitrations consolidated into a single arbitration involving multiple claimants before a single arbitrator, who shall be selected pursuant to the JAMS rules governing the selection of an arbitrator in an employment action, and the Company and/or a Beneficiary Party shall be required to pay only a single filing fee for the Mass Arbitration.

Dkt. No. 8-2 (sec. 12). Ms. Magana argues that the MAA's Section 12 "burdens the procedure by which the delegated gateway issue is adjudicated" and essentially renders the MAA's delegation clause "illusory." Dkt. No. 16 at 13. Defendants argue that Ms. Magana's assertions about

Section 12 are entirely separate from the MAA's delegation clause and have no bearing on the operation of the delegation clause.

The Court agrees with defendants. Ms. Magana has not demonstrated that the MAA's Section 12 regarding "Mass Arbitrations" impacts the delegation clause at all, much less that Section 12 has any effect on the delegation of gateway issues to the arbitrator. Should an arbitrator determine that a dispute is arbitrable, Ms. Magana points to nothing in the MAA's Section 12 that undermines the arbitrability of a dispute. Rather, Section 12 merely appears to provide a mechanism by which matters pending in arbitration may be consolidated into a single arbitration. Ms. Magana has not met her burden to demonstrate that the MAA's Section 12 renders unconscionable the fact of an arbitrator deciding arbitrability as required by the delegation clause. *Rent-A-Center*, 561 U.S. at 74; *Bielski*, 87 F.4th at 1012; *Holley-Gallegly*, 74 F.4th at 1002.

* * *

In sum, Ms. Magana has established only a low degree of procedural unconscionability, and has not established substantive unconscionability in any amount sufficient to compensate for the minimal amount of procedural unconscionability. Accordingly, defendants' motion to compel arbitration is granted.

## IV. CONCLUSION

For the reasons discussed above, defendants' motion to compel arbitration is granted. The present action is stayed pending completion of the arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472 (2024). The parties shall file a joint status report within 30 days of completion of the arbitration, or **April 26, 2027,** whichever is earlier.

**IT IS SO ORDERED.**

Dated: October 26, 2026

Virginia K. DeMarchi
United States Magistrate Judge